Good morning. My name is Rex Heinke. I'm here on behalf of the plaintiff, Paramount Farms. With the Court's permission, I'd like to reserve five minutes of my time for rebuttal. The first issue in this case is ostensible authority. Whether or not Mr. Schroeder, who was the president of Ventilex USA, the U.S. subsidiary, whether he had ostensible authority to make the guarantee that both Ventilex N.V., that was the Dutch parent, and Ventilex USA guaranteed the performance of the machine here, which was to pasteurize pistachios so that customers would not get salmonella poisoning. We submit respectfully that the district court ruled incorrectly on the ostensible authority issue. Our first point there deals with silence. The district court ruled that you cannot have ostensible authority, that is, an agent cannot. It cannot be created by the principle of silence. At least— The court didn't say that. Almost. You keep saying that, and you said it in your briefs. The court didn't say you can never have ostensible agency by silence. It never said that. Your Honor, I was just going to qualify it a little bit. And what I was going to say was, at least if the situation involves emails. I think that was the court's ruling. Admittedly, the ruling is a little imprecise. This always happens when you get oral rulings, and there's argument back and forth, and so on. Here's my problem, counsel. You know, I actually think you've got a pretty good argument on ostensible authority. Except to this extent. You know, if Diekman—is that how you pronounce his name? That's fine, Your Honor. All right. Okay, good. If Diekman's sitting in the room, and Schroeder says, Ventilex U.S. and Ventilex B.V. will stand by this, will stand by this through the TURP process and the FDA approval, whatever it takes. We will guarantee this. You're not going to—Paramount, you're going to love our product. This is going to work great. And Diekman doesn't say anything. I think under the California cases, and under our prior decisions interpreting California law, I think you have a very, very powerful argument for ostensible authority. It's really hard when Diekman has been CC'd on a couple of emails, because we have no idea, you know, whether he opened them on that day, whether he saw them, whether he was home with the flu, doesn't see them for another week or two, whether he's off traveling. It's just impossible to determine, just from a naked CC on an email, that Diekman has an obligation to come forward at that point and say, Schroeder's not authorized to do that. I just want to make that clear to everybody. Your Honor, I would say two things. One is, the district court ruled as a matter of law. Certainly opposing counsel could argue as a matter of fact, and as to the weight of the evidence, that the things that you were talking about are things that should be considered in weighing the evidence. But the district court said as a matter of law, that it cannot be that you can have ostensible authority in these circumstances ever. Do you have any ostensible authority case that is established where the communication was done by email or by letter or by some other indirect method where somebody is not physically present in the room, not physically present on the site at the time that the promise is made? Oh, sure. The Krieger case, which this court decided involved a fax. There was no face-to-face meeting. There were no people there. So that involved a fax. It didn't involve an email, but it involved a fax. Here's the problem with email that I think the district court was disturbed by. In fact, the district court said you could do other things. The problem with email is, you don't even have anything that indicates he received the email. And if you want to talk about the mailbox rule, there aren't even any formalities. Mailbox rule, as we all know, deposit in the mail, it's assumed to have gone. But somebody says, I deposited it in the mail. Telegraph companies, somebody has to take it to the telegraph company. The telegraph company has records that it transmitted, etc., etc. Here, I don't think, I could be wrong, tell me, I don't think you presented anything but a naked email that maybe you folks had because it was directed, I think, to you. Right. So you've got this naked email. There's just nothing, nothing that verifies, swears, etc., that the email actually went to. Okay. First, Your Honor, I think that I respectively, if what the court is saying, what you're saying is sending an email does not create a presumption of receipt, then I respectively disagree with you. I think sending an email does. We all do this all the time and when we send the email, we expect it to arrive. Does it occasionally not arrive? Probably just like letters. How do I even know that he sent the cc to? How do I know it didn't glitch? It's going internationally for one thing. How do I know it didn't glitch? I have people telling me all the time, I sent you an email from some foreign country and I never saw it. It never showed up on my. And of course, the same thing is true with letters or telegrams or faxes. We have somebody swearing, but we have something on one side. What do lawyers do when they send out a notice? They have a verified thing, this was put in the mail, or they have somebody testify, this was put in the mail, etc. There's always somebody on the sending end saying I really did send this to fax. But all they know is they dropped it in the mailbox. The same way that all I know is I hit the button to send it. You don't know, you might know what you know, but you don't know what Mr. Schroeder did. I'm sorry? You don't know what Mr. Schroeder did. And do we have any from him saying I did this? I think he did say that he sent these. These were business records. Was there evidence of that? Your Honor, I don't, there was no dispute below about whether he sent these. The district court's ruling wasn't that he didn't send them. It was that our clients hadn't proved that it was received or read. He accepted your proffer, so he assumed you were going to be able to prove what you had offered to prove. I would also add this. This is not a pure send an email and that's it. There was also the testimony of Mr. Schroeder saying to Sean Tremaine, who was a Paramount employee, that he spoke with the director at Ventilex NV about the emails, that is the draft contract, that there were suggested changes to those, that those changes were then made and here was the proposal and that there were no changes to the guarantee. So it seems quite plain that that substantiates that Ventilex NV received the email with the proposed contract because how could they have discussed the proposed contract with Mr. Schroeder and wanted to make changes in that contract without receiving it? So this isn't just a bare email going out there. There's additional evidence that confirms the receipt by Ventilex NV, that is, Mr. Dyckman, the managing director, their equivalent of the president of the Dutch company. I would also submit that with regard to this question, Judge Bybee, that you suggested an in-person meeting may be different and certainly the district court made the same suggestion. I agree with you, maybe it's a stronger inference in that situation, but I don't think that means the evidence is inadmissible to prove that this guarantee occurred. Also I would submit that this distinction from the point of the view of the person who receives the communication, that's us in this case, makes no sense. The issue is what the doesn't really matter how they knew it. And since there's evidence here not only of emails but of discussion of those emails, that surely is enough evidence to make it admissible and that's all we're talking about here. Whether the district court was correct when it said as a matter of law, you cannot introduce any of these emails about the guarantee. Now I'd also like to point... I thought the district court said that the emails wouldn't be sufficient to establish it, no? Establish? To establish the ostensible authority. Yes. Didn't say you could introduce evidence of it, did it? Well, what he said was... That was your offer of proof. And he said that's not going to make it. He said that's not going to make it. It didn't say you couldn't have evidence of it, it said if you prove what you're telling me you're going to prove, that doesn't make it. That's a little different from I refuse to let you introduce evidence, I believe. I think you're right, Your Honor, but what he did say was that this evidence isn't sufficient to prove the ostensible authority, that the emails aren't sufficient. And I submit in this day and age where we all use emails, we all rely on emails, we all have the expectation and the experience that most of the time they go through, just like letters, faxes, and telegrams, it can't be the law to say that emails are in some special category. Is it correct that you folks prepared the contract? That we prepared the contract? The proposal contract? Well... Somebody said at some point... Okay, what happened there was we got this, what I'll call proposal from Mr. Schroeder, and then based on that, there was the contract that was signed. And that was prepared by whom? Well, we drafted that. You drafted the contract? With having received all the stuff from Mr. Schroeder about what was acceptable to them. So in a sense we drafted it, but it was based on what they sent to us. How do you define the narrow question that is before us? Well, on this point, there's some other points, but on this point I think the narrow question is whether if you introduce evidence of emails that contain this guarantee, and when you introduce evidence that those emails were discussed between the subsidiary and the parent, the changes were then made in that proposed contract and then conveyed to us, whether that is sufficient to, based on the offer of proof, to show ostensible authority. Of course, there's going to be other evidence. I would think that you are asking us to assume that the CC was received and acted upon. Yes, it was acted upon. Mr. Schroeder said we discussed it. So it's not simply an assumption based on the email, but the additional evidence from Mr. Schroeder, who was the president of IntellectsUSA, that he discussed it with the Dutch parent company, made changes in the proposal based on those discussions. What was the language in the contract that related to Ventilex BV guaranteeing the machine? Let me see if I can find that quickly. Here is, it's on, for example, page 11 and then page 13 of our opening brief. There were two different statements, and they're statements were not in the contract. This was a separate, what the parties called the minor contract and the major contract. And the major contract was what Judge Fernandez said we drafted. The minor contract was this guarantee. Was it in writing? Yes. Okay. That's the November 20, November 8, 2005 document you're talking about? Yes, Your Honor, and previously essentially the same thing had been said on November 22, 2004 in a letter. Same language. And what does it say? Well, the 2004 says this, VentilexUSA and VentilexBV hereby certifies that the equipment that we supply will be accepted by the FDA for the pasteurization of almonds. Ventilex will work hand in hand with Paramount Farms to make sure that the system is accepted by the FDA and validated. Ventilex guarantees that Ventilex equipment will be validated and will correct any item found to be deficient. Who does Ventilex refer to in the penultimate paragraph? We think it refers to both. I'm sure my opponent thinks it refers to only one of them, and I think that's a factual question for the trial. Judge Bybee, did you want the language of the 2005 guarantee? No, that's okay. All right. So opposing counsel argues that de novo review is not appropriate here because the trial court made factual findings. We respectfully submit that a trial court never makes factual findings on an offer of proof. It's like a 12B6 motion or a summary judgment motion. What is offered is, here are all these, assume all these facts. On that basis, what you're ruling, and the district court's ruling was, well, that won't prove ostensible agency. That's a legal ruling as a matter of law and should be reviewed here de novo. I'd also like to turn to two other questions. The issue of the compound question. VentilexBV's president, the managing director, was asking his deposition, did VentilexBV and VentilexUSA guarantee that the pasteurizing machine would get government approval? And he said three times yes. The district court, then there was an objection at the trial, and the objection was that that was vague, it was ambiguous, there was no foundation, and it was compound. Was there an objection at the depot? I'm sorry? Was there not an objection at the depot? The objection at the depot was form. Exactly, yes. Then at the trial, opposing counsel elaborated and said, well, by form I meant vagueness, ambiguous, no foundation, and compound. The district court rejected the first three objections and said, however, that the question was compound and therefore excluded the managing director's responses. I respectfully submit that that is not a compound question. When I say to a witness at a trial, did you see A and B walk across the street, and the witness says yes, there's nothing wrong with that question. I do not have to say, did you see A walk across the street? Did you see B walk across the street? If the answer is no, then the answer may be ambiguous because it's not clear what they're saying no to. Are they saying I didn't see either of them, I didn't ask A and B and say yes, there's nothing compound about that. And it certainly doesn't confuse anyone if I ask you, did you say Bob and Mary walk across the street? The district court was bothered by the fact that there was an objection made, which you argue was ambiguous because it wasn't specific, it was just to form, but nobody follows up on it. And that struck me as a little odd as well, that we have an objection as to form, and somebody didn't say, well, what's the problem? Because if you didn't like the form, I'm going to fix it right now. It also struck me as a little odd that this question was asked at the deposition without any follow-up questions, because it seemed like a pretty important question. And if there's an objection made, it struck me as sort of odd that somebody didn't sort of tease it all out and get a little more detail that might have cured any defect in form. Right, certainly you could have said that. Of course, everybody knew that he was not going to come to the trial, so opposing counsel, if they thought that they had something to ask him, would be helpful. Why wasn't he coming to the trial? Because he's in the Netherlands and he never worked. He had been fired by the parent company, so he was not going to come to the trial. That's why the videotape deposition was used. He was not at the trial. So this was your one and only opportunity to tease any of this out of him, and it struck me as a little surprising that with an objection made and a single question, that the question wasn't followed up. And I think the same thing, though, is true is why didn't opposing counsel follow up? And the reality, of course, is in a deposition, Your Honor, people say objection to form routinely all the time. Form, form, form, form. I just often people reserve, I think that's what happened here. They reserved an objection. Plus you quite often don't know during a deposition what's going to be pivotal. True. And I think what happened here, my recollection is that the objection to form was not to this specific question, but there was simply an overall, yes, you can have an objection as to the form of all the questions, and then they went forward. So it's pretty much pro forma, and people don't want to interrupt the examination, getting into on every question, well, what's the objection on form? At this point, our review of Judge O'Neill's ruling is for abuse of discretion, right? A pretty high standard for you to overcome. Is it an abuse of discretion, and we submit respectfully that as a matter of law, it is abuse of discretion to say that this kind of question is compound, especially, this is absolutely central to the case here, to exclude this evidence, this is not some minor point, this is at the very core of the case. We'd also submit that the objection as to form is simply too vague at the deposition, that they needed to make a specific objection, and therefore that they waived any objection. I'd also like to turn lastly to this question of hearsay. Mr. Schroeder testified that Ventilex BV prepared the guarantee that we're talking about, and the trial court said, sustained an objection, that that was hearsay. I submit respectfully, that is not hearsay. When I say that somebody did X, my statement is not hearsay. And that's what Mr. Schroeder did. He said Ventilex did X. The X was, they prepared the statement, the guarantee. There was no hearsay involved here. And I respectfully submit that the trial court was in error to exclude this as hearsay. And the alternative, if this was really viewed as a statement by Ventilex, and remember, this was a statement by Mr. Schroeder, not saying Ventilex said anything. Then it comes within numerous exceptions. Among others, that it was the formation of the agreement, that it was a party admission, if it was a statement by NV, it showed what their state of mind was. It was within the state of mind exception. So, all of that evidence should have come in, the compound, the allegedly compound answers to the questions. The allegedly hearsay statement about what Mr. Schroeder, I'm sorry, what Ventilex NV did. And the evidence of the guarantees and the emails. And with all of that evidence, surely that was enough for this to go to the fact finder to resolve this. Thank you. Thank you. Mr. Hirsh? Good morning, your honors. Mr. Hankey has tried to get you involved in several potentially interesting legal issues in this appeal. But the fact is, you don't actually have to decide any of them. What I would propose is that you focus on the district court's determination as a fact finder that Paramount failed to prove the actual reliance requirement of ostensible agency. If you focus on that, you won't have to decide whether and when silence in response to an email creates an ostensible agency, although I agree with the court's take on that. You won't have to decide whether the presumption of delivery applies to emails. You won't have to decide what level of scienter applies when an ostensible agency is based on silence. You won't have to decide what effect the oral proffer should have on the standard of review. All you have to do is decide whether a reasonable fact finder could have concluded, as the district court did, that Paramount didn't prove that its employee, the engineer Sean Tremaine, relied on VBV's silence in response to the emails described in Paramount's oral proffer to conclude that VUSA had authority to bind VBV to an unlimited approval guarantee. And the answer to that question, I would submit, is quite clear. There were lots of facts to support a finding of no actual reliance. I divide these facts up into before and after the contract was signed. The facts that arose before the contract was signed show that it's simply implausible that Paramount would have relied on VBV's silence for something as important as this approval guarantee, potentially worth millions of dollars. Paramount is one of the world's largest almond suppliers. It's a sophisticated entity that knows how to put things in writing and how to do deals. In fact, as Judge Fernandez was pointing out, Paramount drafted the proposal contract- Counsel, it's not that it's relying on silence. The silence is a form of acquiescence in promises that have been both put in writing and have been made orally to them. They think that VBV and Ventilex US have told them that they're going to guarantee that this thing is going to satisfy the FDA in term. Well, no, your honor, I don't quite agree with that characterization because when it comes to orally, the district court found that there was no oral express guarantee. He found the witness not credible on that point. And to get to any other oral, and that has to do with the representation supposedly made by Hank Dykeman in the spring of 2005. And the court just said, I don't believe that. So it came down to whether reliance, whether Sean Tremaine relied on silence in response to these emails that were part of Paramount's proffer. So your honor, in the same light, the same contract documents include nine solid pages of standard Paramount conditions, which Paramount also insisted upon. This is a very sophisticated party. Obviously, Paramount could have required Hank Dykeman or someone at VBV to sign an approval guarantee. But it didn't. That contract that Mr. Hankey referred you to, by the way, he referred to an early version of it that doesn't really count because they weren't negotiating at that time. The one that you want to look at is the November 8th, 2005 one, which is at pages 11 to 12 of our answering brief. But there's no signature on that approval guarantee. And that was one of the things that influenced the district court to get rid of their breach of express written warranty claim at the very outset. Now, after the contract was signed, the indications of non-reliance became even stronger. The fact is, Paramount never invoked or even mentioned the purported VBV guarantee until it filed this lawsuit. When Dave Zeflin of Paramount hand-delivered Paramount's demand letter in February of 2008, he handed that letter to Tom Schroeder of VUSA, not to Hank Dykeman of VBV, who was standing right there. And that letter was addressed to Schroeder and to VUSA, not to Dykeman or VBV. And that letter gave VUSA... Right, but if they thought that Schroeder was representing VBV, that would be perfectly natural. But if they thought that VBV was a party to an unlimited express approval guarantee, why did they never, ever mention that guarantee in a demand letter or at any other time until they filed this lawsuit? They never sent VBV a demand letter. They never mentioned a VBV guarantee. They never accused VBV of breaching any guarantee. These are all facts, however you want to slice them. They're certainly facts that a district court was entitled to rely on. I don't think it's clearly erroneous when you look at these facts to say, well, as he did, to say, as he did, we can't tell if these were relied on. Now, what does Paramount have to say about all this evidence of non-reliance? Well, they didn't even engage the reliance issue until their reply brief. And in their reply brief on pages 25 to 27, which I highly recommend looking at, they basically admit that the proffered emails don't provide evidence of reliance. Instead, they first try to cast doubt on whether the district court even made a reliance finding, although it most certainly did, and that's at 3 ER 280. Then Paramount, at long last, gets to its reliance evidence, which consists entirely of testimony by Paramount Vice President Dave Zeflin, their chief fact witness, whom the district court found to be not credible. Now, tellingly, Paramount did not present or even offer to present any testimony by Sean Tremaine, the Paramount engineer who negotiated and ultimately signed the contract with the USA. As the district court recognized, and you can see this at 3 ER 259, Tremaine was the person at Paramount, if anyone, who would have relied on VBV's silence in response to these emails. And therefore, Tremaine was the person best qualified to testify about reliance. Instead, at pages 25 to 26 of its reply brief, Paramount provides a transcript excerpt from the testimony of the not credible Dave Zeflin. But that excerpt is from when he was testifying on the subject of the express oral guarantee. He wasn't talking about ostensible agency at that point in the trial, because the court already had ruled on that and it was out of the case. So this is irrelevant testimony by a witness that the court found not credible. Did the district court decide this on reliance? Yeah, at page 3 ER 280, he says, after Paramount made its oral proffer, the court discussed a hypothetical situation in which Paramount and VUSA and VBV representatives are physically in the same room together. And VUSA says, you know, I am speaking for Ventilex BV, and the VBV representative says nothing. And the court says that a situation like that could create an ostensible agency from silence. And then he contrasts that with the situation here, and this is what he says. Quote, here we are talking about emails that allegedly were sent. We don't know whether they were received. We don't know whether or not they were read. We don't know whether or not they were in any way relied on. But we do know that they were not refuted by VBV. But I can't jump to the conclusion that all of that happened, but you're asking me to. Okay? So now, what else does Paramount have on the reliance issue? On pages 26 to 27. I have to say that's pretty weak, counsel. It's got one little sentence there. We don't know whether or not they were in any way relied on. Well, it's just, I mean, what does it mean, unless it means what it says? Yeah, given, I mean, given the extensive discussion that goes on for pages and pages, which I reviewed yesterday, about ostensible, I don't remember that the reliance issue comes up again was really relied on by the district court. Well, it's also a theme that's carried forward later when they're talking about the express oil warranty. And again, the judge there touches on all these points that, wow, this was a very sophisticated party. It knew how to do things in writing. I just don't, and he did not believe that they relied on any warranty of this type from BVV. Okay, can you give me a citation to other pages where the district court says they didn't rely? Yeah. When we get to the express oil warranty. You have a little problems. Wouldn't that be a factual question? Exactly. Your honor. It is a factual question and it's subject to clear error review. Whoa, whoa, whoa, whoa, whoa, whoa, whoa, whoa, the district court didn't decide any of these things that accepted their proffer of proof. I think this is a matter of law, not a, not a findings of fact because he was not issuing findings of facts. I don't think this is clear error standard. Well, let me, let me actually address that. I understand this oral proffer argument. One problem is that it simply doesn't apply to the ostensible agency actual reliance element because even Paramount admits at pages 25 to 27 of its reply that the proffer does not address actual reliance. Instead they cite all this testimony by Dave Zeflin as their evidence of actual reliance. And this was a witness that the district court found not credible. The second problem with the oral proffer argument is that the standard of review I think does not turn on whether a proffer is taken, but rather on whether the courts are involved in something essentially factual or essentially legal. This court has held that if the application of the law to the facts requires an inquiry that's essentially factual, review is for clear error. And as Judge Fernandez was suggesting, when he ruled quote unquote on the proffer, what he was really doing was he was the fact finder and he was sitting there and saying, okay, I understand what you're going to show me, but if you show me that I as fact finder am not going to be persuaded by it. This is something a little different from let's say a summary judgment motion. But beyond that, how does one tell whether a mixed question is essentially factual or essentially legal, which I think is the issue here. And I thought this was interesting. The leading treatise on federal standards of review suggests the following test. If the application of law to fact requires the reviewing court to define a test for future cases, then it involves the court's lawmaking judgment and it should be reviewed de novo. But if a mixed question only requires the reviewing court to see whether a particular set of evidence rises up sufficiently to meet a legal test, that's fact finding, not lawmaking. And it should be reviewed for clear error. And I think that's exactly what's going on here. The district court's finding that Paramount failed to prove the actual reliance was purely factual. Reviewing that determination will not produce a new legal test and it will not call upon this court's lawmaking judgment. Paramount pretends to see a legal issue in the district court's very fact-based ruling about the effect of VBB's silence in response to emails. But Paramount, we think, is wrong. They're quite understandably playing the appellant's game of trying to conjure up a legal issue for de novo review. But the reality is that the district court decided a very fine-grained factual issue, namely, whether the standard test for ostensible agency was met by VBB's silence in response to a very particular set of emails described in detail in Paramount's oral proffer and which were sent under a very particular set of circumstances. There is just no way that such a fine-grained factual inquiry is going to create a legal test for future cases. It just can't. Which, by the way, is why it's fruitless to cite cases like Krieger and CAR Transport as though they're capable of determining anything here when they didn't involve emails at all. To underscore the factual nature of its ruling, the district court acknowledged that the result might have been very different if you changed a few facts. For example, if the principal remained silent while in the physical presence of the agent and the plaintiff. And in fact, the question might turn on even smaller factual distinctions. What if an email from VUSA to VBB had a subject line that screamed in capital letters, Hank, I'm about to bind VBB to an unlimited product guarantee, OK? And what if Paramount knew that VUSA had sent VBB that email and that VBB had said nothing in reply? That might have been a different case. Or it might not, depending on other surrounding circumstances and facts of record. Who knows? A case with those facts could turn on whether Hank Dykeman receives his emails on a cell phone and how much of the subject line is displayed in the software on his cell phone. What if he only saw, Hank, I'm about to dot, dot, dot? These cases are unbelievably factually intensive. And my point is, whatever you decide on the ostensible agency theory in this case, it's inevitably going to involve very small bore, fact-finding, not lawmaking, unless you buy into Paramount's premise that the district court legislated some overbroad, bright-line rule here that a principal's silence never creates ostensible agency. But that's just not what the court did. If we, if I have a moment, I'd like to speak just very briefly about the implied warranty claim. Here, I think, as with ostensible agency, there's a simple answer. The simple answer is that Paramount's trial counsel, Mr. Van Gundy, conceded and gave  Take a look at the colloquy at 2 ER 211 to 215. There the court points out that the content of the warranty is not implied at all. It was fully expressed in the November 8, 2005 letter. The only question being whether VBV was the entity that expressed and was bound by it. And Mr. Van Gundy agrees with that at pages 213 to 214. And then VBV's counsel, our counsel, says, I'm glad we got that agreement. And from then on, implied warranty was out of the case. Could you turn to the question of the compound question, please? Yes. So one threshold point I'd like to make about Paramount's evidentiary arguments is that the context here is this was a bench trial. The district court knew exactly what he himself was excluding. And it's kind of difficult to believe that he would have been overly impressed as a fact finder with any of it. So I think the question of prejudice is very difficult to establish here. Second, we're governed by the abuse of discretion standard. And the district court provided good reasons for all of its rulings. Now, the judge might have ruled a different way. But it was far from unreasonable for the judge to make these calls. Now, as to the Dykeman testimony, we think the problem- Why don't you tell me why the question was compound? OK. So the claim is that the following two questions, I'm sorry, their claim is that the following two questions were not compound. Was it your understanding that Ventilex BV and Ventilex Inc gave Paramount the guarantee that this machine would get all necessary approvals? And the second question is, so to make the sale, Ventilex BV and Ventilex Inc guaranteed Paramount that the machine it was buying would get the necessary TERP approvals. So now, we think the court properly exercised its discretion by refusing to let the central issue of the case, and Mr. Henke agrees with this, be decided on a foreign witness's gotcha question. All Paramount had to do was to ask Mr. Dykeman, did Ventilex BV give Paramount an unlimited guarantee that the product would obtain all necessary government approvals? It would have been that simple to clarify what all agree was the central issue in the case. So given that it could have been done, it seems kind of obvious to me why counsel phrased it the way he did. I think it's because he hoped to make the case turn on a gotcha. VBV saw this and objected to form at the depot and objected at trial that the question was both compound and vague. We think it was both, but if you don't think it was compound, you could certainly uphold his decision on the ground that it was vague and that it created... Well, I don't know that he... No, I think he just didn't adopt it. That's the... I could be wrong, but my recollection is that he seized on compound. Again, I could be wrong on that. But it's not the one... It certainly is not the one that he adopted. And moreover, the proof that the witness was confused by this question lies in the fact that his answers elsewhere conflicted so starkly, because he also testified that no one at VBV had anything to do with the negotiations, that he had no authority to enter into any unlimited guarantee and was in fact limited to 2.5 million euros, that he wasn't ever asked to give such a guarantee, that he never authorized anyone at VUSA to make any agreements on VBV's behalf, and that he never thought that VBV was granting this guarantee. So how can that even be squared with the answers given to this confusing question? Given the stark conflict in Mr. Dykeman's testimony, when you compare it to what was excluded, the risk that he misunderstood this vague and compound question was very high, and the district court certainly didn't abuse its discretion in refusing to consider Dykeman's response to that question in this bench trial. We rule strictly from what we read in the record. No. Would we make the ruling that you're asking us to make, then? Would we make the ruling that you're urging upon us at this point? Would you make the... Would I make... I'm sorry. Would the court make the ruling that you're urging if what we relied upon was the record, not certain inferences that you hope we make from what is in the record? Actually, I'm not aware that I'm asking you to draw any special inferences. Maybe I'm just not understanding. Maybe I'm just not understanding your position. That's all right. I'm sorry. There's no doubt there's a take there, and I'll... We'll play it back, and I'll see if... All right, thank you, Your Honours. Thank you. Mr. Henke, I think you used your time. I'm going to give you a minute. I appreciate it. Let me just turn and focus on this question of reliance. I respectfully disagree with opposing counsel. The judge never, never ruled on whether Paramount relied on the guarantee. What opposing counsel relies upon is three excerpts of the record, page 280, especially at lines 15 through 19. And here's what the judge said. Here, we're talking about emails that allegedly were sent. We don't know whether they were received. We don't know whether or not they were read. We don't know whether or not they were in any way relied on. We do know that they were not refuted. The reliance there is not Paramount's reliance. The reliance the judge is talking about there is the Dutch parent's reliance. The judge never made any finding about Paramount's reliance because he never got to that issue. He said, you haven't even proved ostensible authority in the first instance. And so he never got to any reliance question. The second case is compounded, possibly, by what isn't in the record rather than what is. If we look strictly at what is in the record and ruled, we might or might not reach the result that... Right, but my point is the trial court never dealt with Paramount's reliance. That issue, the trial court never ruled on, and you won't find it discussed. What I read you is what opposing counsel relies on. It has nothing to do with whether or not Paramount... What would be... Why would it be proper to get into the question of reliance if we recognize that something was sent and not refuted? Why do you go beyond that? Right, then I think we go back and have a new trial, and they can argue about whether or not Paramount can show it relied. Opposing counsel argues vigorously that, you know, Paramount... Justice Counsel, you're over your time. All right, Your Honor. Thank you very much. I appreciate it. Thank you, counsel, for the argument. The case is submitted, and the court stands in recess until tomorrow morning. All rise. Don't worry, I'll get there. This court for the section. And adjourned. Thanks. I got it.
judges: Farris, Fernandez, Bybee